UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
A. KRAUS & SON,

                            Plaintiff,

                    v.                                **DECISION AND ORDER**
                                                                     CV 05-5487 (ARR)(VVP)

BENJAMIN MOORE & CO., JAMES S. GORMAN,
et al.

                            Defendants.
----------------------------------------------------------------x
POHORELSKY, Magistrate Judge:

      Judge Ross has referred to me for a decision, pursuant to 28 U.S.C § 636(b)(1)(A), the plaintiff's motions to remand and amend the complaint in this breach of contract and tort action. The defendants, Benjamin Moore & Co. and James Gorman (hereinafter "removing defendants"), removed the instant action to this court on the basis of diversity jurisdiction. The plaintiff seeks to remand the case on the ground that removal was improper because non-diverse parties are present, and also requests attorneys' fees and costs incurred as a result of its efforts to remand this case. In opposition, the removing defendants argue that those non-diverse parties were fraudulently joined by the plaintiff to defeat diversity, and should therefore be overlooked for purposes of subject matter jurisdiction. For the reasons discussed below, the motion to remand is GRANTED and the motion to amend is DENIED.

## BACKGROUND

### I. Facts

      This case arises from the unsuccessful sale of a third-generation, family-owned paint supply business and certain actions taken by parties involved in negotiations to purchase the business. The plaintiff, A. Kraus & Son ("Kraus"), is a New York partnership, which operates a

retail store that sells paint products, wall coverings, carpeting, and related tools and accessories. (Am. Compl. ¶¶ 1, 8.) Kraus negotiated with prospective buyers from 2003 to June 2005 to sell the store. (*Id.* ¶ 30.) Two of the defendants here, Tony Kostoulas and Gus Mantikas were directly involved with Kraus in the negotiations. (*Id.* ¶ 34.) Prior to negotiations, Kraus asked Kostoulas and Mantikas to sign a non-disclosure agreement prohibiting them from disclosing details of the negotiations for any purpose except to evaluate the merits of the Kraus offer. (*Id.* ¶ 33, 72-73.)

To effectuate a potential sale, Kraus also engaged in negotiations with the defendant, Benjamin Moore & Co. ("Benjamin Moore"), a manufacturer of paint products and Kraus' main supplier in that product area. (*Id.* ¶ 37.) The negotiations between Kraus and Benjamin Moore concerned the transfer of rights under a retailer agreement, previously entered between Kraus and Benjamin Moore, to a potential buyer of the Kraus paint shop. (*Id.* ¶¶ 15-16.) Benjamin Moore's consent was contractually required before such a transfer could take place. (*Id.* ¶ 24.) The terms of the agreement, in part, stipulated that (1) Benjamin Moore would not sell its products to Kraus' competitors within Kraus' "primary geographic market area," and (2) Kraus would sell only Benjamin Moore paint products in its store. (*Id.* ¶¶ 17-19.) The negotiations concluded with defendant, James Gorman, a Benjamin Moore employee, giving Kraus a sixty-day window in which to negotiate a sale which would include the retailer agreement rights. (*Id.* ¶ 42.) The only condition interposed by Gorman was that any potential buyer have good credit and an existing retailer agreement with Benjamin Moore. (*Id.* ¶ 43.)

While discussions were ongoing with defendants Kostoulas and Mantikas, the plaintiff met again with Gorman to discuss an extension of the sixty-day period. (*Id.* ¶ 53.) An

agreement as to an extension could not be reached, however. (*Id.*) Shortly afterwards, Kostoulas and Mantikas informed Kraus that they had been contacted by Gorman and told that the retailer agreement rights would not be transferred in a prospective sale unless they, as potential buyers, also agreed to either a five-year lease with a five-year option to purchase, or a ten-year lease of the premises upon which the Kraus paint store was situated. (*Id.* ¶ 57.)

Upon receipt of this news, Kraus met with Gorman for a third time, expressing his concern over Gorman's interference with the sale negotiations. (*Id.* ¶ 58.) Gorman admitted to telling Kostoulas and Mantikas about the additional conditions and informed Kraus that a new Benjamin Moore retailer would be opening up in Little Neck, which was within the "primary marketing area" of the Kraus paint store. (*Id.* ¶¶ 59-60.) Gorman instructed Kraus to disclose this fact in future sale negotiations. (*Id.* ¶ 60.)

Unbeknownst to Gorman or the other defendants, Kraus was also engaged in discussions during the same period with another interested buyer, Gene Park, a proprietor of numerous other paint shops in Nassau and Queens counties. (*Id.* ¶¶ 61-62.) Through his contact with Park, Kraus learned that Kostoulas and Mantikas would be opening their own store, Bayside Paint Place, Inc., a couple of blocks from the Kraus store, giving them marketing rights to Benjamin Moore products in what was Kraus' primary marketing area. (*Id.* ¶¶ 63, 74-75.) Park also disclosed to Kraus that Benjamin Moore, similar to what it had done with Kostoulas and Mantikas, contacted Park with its own condition for the purchase of the Kraus retail business, namely, that Park enter into a ten-year lease for the premises. (*Id.* ¶ 64.)

Ultimately, the plaintiff was unable to consummate a deal with either Kostoulas and Mantikas or Park. (*Id.* ¶ 69.) The plaintiff now charges that various contracts and agreements

had been breached as a result of behind-the-scenes dealings among the defendants. In addition, the plaintiff alleges that Kostoulas and Mantikas conspired with Benjamin Moore to undermine the sale of the Kraus retail business, an allegation which the plaintiff contends is substantiated by Bayside Paint Place having opened a few blocks from Kraus' retail location with marketing rights to Benjamin Moore products. (*Id.* ¶¶ 70-73.)

## II. Procedural History

The present action is actually an outgrowth of one that had been initiated by the plaintiff but voluntarily withdrawn after having been removed to this court. In the first action, the plaintiff sued only Benjamin Moore, Gorman, and a "John Doe" corporation which the plaintiff believed conspired with Benjamin Moore to undermine the plaintiff's efforts at selling its painting supplies business. (*See* Summons with Notice, filed July 5, 2005, attached to Defs.' Opp'n Pl.'s Mot. to Remand as Ex. C.) That action was originally filed in Queens County Supreme Court and subsequently removed to this court by Benjamin Moore and Gorman. (*See* Notice of Removal, filed Sept. 9, 2005, attached to Defs.' Opp'n Pl.'s Mot. to Remand as Ex. D.)[1] Subsequent to removal, the plaintiff withdrew the matter pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure. (Notice of Dismissal, dated Oct. 18, 2005, attached to Defs.' Opp'n Pl.'s Mot. to Remand as Ex. E.)

On or around October 18, 2005, the plaintiff initiated another action against Benjamin Moore and Gorman in Queens County Supreme Court, but adding as additional defendants,

---

[1]This first action removed to this court had been assigned to Judge Glasser and Magistrate Judge Go under docket number, 05-CV-4291.

Bayside Paint Place, Inc. ("Bayside Paint"), Tony Kostolous, and Gus Mantikas.[2] (*See* Summons and Compl., dated Oct. 18, 2005, attached to Soloman Aff. Supporting Pl.'s Mot. to Remand as Ex. 7.) While still in Queens County Supreme Court, the plaintiff amended the complaint once. (*See* Amended Summons and Compl., dated Nov. 14, 2005, attached to Soloman Aff. Supporting Pl.'s Mot. to Remand as Ex. 7.) The Benjamin Moore and Gorman defendants then removed the case to this court, where it exists in its present state. (*See* Notice of Removal, dated Nov. 22, 2005, attached to Soloman Aff. Supporting Pl.'s Mot. to Remand as Ex. 7.)[3]

## DISCUSSION

### I. Kraus' Motion to Remand

The requirements for removal of an action to federal court are set forth in 28 U.S.C. § 1441(b):

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. *Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.*

*Id.* (emphasis added). The second avenue upon which removal may be effected is, of course, based on the diversity of citizenship basis for subject matter jurisdiction in federal district courts, as codified in 28 U.S.C. § 1332(a)(1) (The district courts shall have original jurisdiction of all

---

[2] Bayside Paint replaced the "John Doe" corporation defendant named in the initial suit. (*See* Oral Arg. Tr. 53-54, Feb. 3, 2006.)

[3] The other defendants, Bayside Paint, Kostolous, and Mantikas did not file their own papers but join in Benjamin Moore's and Gorman's opposition to the present motion. (*See* Oral Arg. Tr. 57.)

5

civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of different States."). *See also* 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3723 (3d ed. 1998) ("This passage [referring to the second basis for removal under section 1441(b)] has its primary application in actions that are removed on the basis of diversity of citizenship.").

There is no dispute that the plaintiff is a New York citizen for purposes of diversity jurisdiction. (*See* Am. Compl. ¶¶ 1, 8.) Nor is there any dispute that some of the defendants here are New York citizens and from a jurisdictional perspective are non-diverse. (*See* Defs.' Opp'n Pl.'s Mot. to Remand 1 (acknowledging that "Plaintiff . . . named four non-diverse parties").)[4] It therefore appears that this action was not properly removed and must be remanded to state court for lack of subject matter jurisdiction. *See Federal Ins. Co. v. Tyco Int'l Ltd.*, No. 04-CV-9086, 2006 WL 728400, at *8 (S.D.N.Y. Mar. 21, 2006) (citing *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) ("In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability.")).

The defendants contend, however, that the non-diverse parties were "fraudulently joined," and thus remand is unwarranted here. The law is clear in this and other circuits that a "defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Pampillonia v. RJR Nabisco, Inc.*,

---

[4]Those "non-diverse parties" are Gorman, Bayside Paint Place, Inc., Kostoulas, and Mantikas. Benjamin Moore is the only diverse party, being a New Jersey corporation. (Am. Compl. ¶ 2.)

138 F.3d 459, 461 (2d Cir. (1998). *Accord Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004) (citation omitted); *Ford v. Elsbury*, 32 F.3d 931, 935 (5th Cir. 1994) (" 'The burden of persuasion placed upon those who cry fraudulent joinder is indeed a heavy one.' ") (citations and internal quotations omitted); *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) ("Because a party who urges jurisdiction on a federal court bears the burden of proving that jurisdiction exists, a removing party who charges that a plaintiff has fraudulently joined a party to destroy diversity of jurisdiction has a 'heavy burden of persuasion.' ") (citations omitted). Proof of fraudulent joinder therefore requires a showing, "by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia*, 138 F.3d at 461 & n.3 (summarizing "fraudulent joinder" tests from other circuits).[5] Non-diverse parties determined to be fraudulently joined are deemed "nominal parties" and disregarded for purposes of establishing diversity jurisdiction. *See Vets North, Inc. v. Libutti*, No. CV-01-7773, 2003 WL 21542554, at

---

[5]The language in *Pampillonia's* "fraudulent joinder" test, requiring a removing defendant to show "no possibility" for recovery exists, "cannot be taken literally." *In re Rezulin Products Liab. Litig.* (Rezulin I), 133 F. Supp. 2d 272, 280 n.4 (S.D.N.Y. 2001). As Judge Kaplan explained,

> Even if a plaintiff's claim against a non-diverse defendant were squarely precluded by a recent decision of a state's highest court or by a statute precisely applicable to the claim, there always would be a possibility that the court or legislature might change its mind so as to permit the plaintiff to prevail. In consequence, several circuits, in decisions cited with approval by the Second Circuit in *Pampillonia*, have indicated that the standard more accurately is described as requiring a showing that there is no 'no reasonable basis' for predicting liability on the claims alleged.

*Id.* (citing *Pampillonia*, 138 F.3d at 461 n.3) (additional citations omitted). The court therefore applies the "no reasonable basis" standard to the present case.

7

*5 (E.D.N.Y. April 21, 2003) (Boyle, Mag. J.) ("Federal courts must disregard nominal parties and 'rest jurisdiction only upon the citizenship of real parties to the controversy.' ") (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460 (1980)).

The operative complaint contains four claims, three of which may potentially involve non-diverse parties.[6] These three claims are (1) breach of a non-disclosure agreement by Kostoulas and Mantikas; (2) tortious interference with prospective contractual relations by all the defendants; and (3) fraudulent misrepresentation by Benjamin Moore and Gorman.[7] Of these claims, counsel for the removing defendants conceded at oral argument that the breach of a non-disclosure agreement claim is adequately pleaded. (Oral Arg. Tr. 44 ("[Counsel for defendants]: [W]ith regard to . . . the claim for the non-disclosure agreement . . . . The Court: [I]t seems to me, that it's properly pleaded. I mean they plead the existence of an agreement. They plead a breach of the agreement. So, that is [sic] states a claim. [Counsel for defendants]: It does state a claim.").) The court therefore need not detain itself with a lengthy fraudulent joinder analysis, insomuch as the removing defendants attack the sufficiency of the pleadings, since it is relatively

---

[6]It is well-established that "the propriety of removal is to be determined by the pleadings at the time of removal." *Federal Ins.*, 2006 WL 728400, at *9 (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)) (additional citation omitted). While the complaint referred to by this court is titled "amended complaint," this, as counsel for the plaintiff explained at oral argument, referred to an amendment while in state not federal court. (Oral Arg. Tr. 64.) Reference to the "amended complaint" for purposes of deciding the motion to remand is therefore proper. By the same token, the "amended complaint" referred to by the court is distinct from the proposed amended complaint accompanying the plaintiff's motion to amend and filed in this court subsequent to removal.

[7]While a fourth claim contained allegations of breach of contract against Benjamin Moore and Gorman, a non-diverse party, counsel for the plaintiff acknowledged at oral argument that Gorman was not a party to the contract at issue, and therefore properly conceded that no claim could be stated against Gorman. (*See* Oral Arg. Tr. 7.)

clear, and moreover, undisputed, that the plaintiff has satisfied the pleading requirement for at least one claim involving non-diverse parties.

The removing defendants raise an additional argument, however. In essence, they contend that even though the claim was adequately pleaded under the fraudulent joinder standards outlined above, that claim was not properly joined in the complaint under the applicable procedural rules, and thus should be disregarded for purposes of establishing diversity jurisdiction. (*See* Defs.' Opp'n Pl,'s Mot. to Remand 7-9; Oral Arg. Tr. 44-48.)

While the parties have not supplied this court with any relevant law, the defendants' contention appears to rest upon the doctrine of "fraudulent *mis*joinder." The Second Circuit Court of Appeals has never confronted a situation involving "fraudulent misjoinder," but several cases in the Southern District have addressed the issue. *See, e.g., Tyco Int'l*, 2006 WL 728400, at *18; *In re Rezulin Products Liab. Litig.* (Rezulin II), 168 F. Supp. 2d 136, 146-47 & nn. 51-52 (S.D.N.Y. 2001) (citations omitted). First recognized by the Eleventh Circuit in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000), the rule of "fraudulent misjoinder" is aimed at efforts " 'to defeat removal by joining together claims against two or more defendants where the presence of one would defeat removal and where in reality there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard.' " *Tyco Int'l*, 2006 WL 728400, at *18 (quoting *Conk v. Richard & O'Neil, LLP*, 77 F. Supp. 2d 956, 971 (S.D. Ind. 1999)) (additional citations omitted). In formulating the fraudulent misjoinder doctrine, however, the *Tapscott* court explicitly cautioned that not all instances of misjoinder are "fraudulent," and the court should only retain jurisdiction where the misjoinder is found to be

9

"egregious." *Tapscott*, 77 F.3d at 1360. *See also Bavone v. Eli Lilly and Co.*, No. 06-153-GPM, 2006 WL 1096280, at *2 (S.D. Ill. Apr. 25, 2006) ("The *Tapscott* court emphasized that misjoinder is tantamount to fraudulent joinder not simply when claims are misjoined but when they are *egregiously* misjoined.") (citation omitted).

Unfortunately but not surprisingly, courts have struggled to arrive at a uniform, working standard as to what constitutes "egregious" fraudulent misjoinder such that the existence of non-diverse parties and claims must be overlooked for purposes of conferring federal jurisdiction. *Bavone*, 2006 WL 1096280, at *4 ("In the ten years since *Tapscott* first heralded the fraudulent misjoinder doctrine, no clear standards for evaluating fraudulent misjoinder have emerged.") (citation omitted); *Rutherford v. Merck & Co., Inc.*, No. 06-159-GPM, 2006 WL 1064071, at *9 (S.D. Ill. Apr. 21, 2006) ("Many courts have foundered on shoals of tautology in trying to define fraudulent misjoinder.") (collecting cases); *Tyco Int'l*, 2006 WL 728400, at *18 ("Predictably, the courts have wrestled with the . . . definition of an 'egregious misjoinder' of claim."). What is clear, however, is that any finding of egregious misjoinder inevitably clashes with the well-recognized principle that federal courts are courts of limited jurisdiction. *Cf. Somlyo v. J. Lu-Rob Enters. Inc.*, 932 F.2d 1043, 1045-46 (2d Cir. 1991) ("In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability.") (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941)); *Bavone*, 2006 WL 1096280, at *3 ("In the Court's view, whether viable state-law claims have been misjoined – even "egregiously" misjoined – is a matter to be resolved by a state court."). And, in the absence of any clear direction from the Supreme Court or Congress, this court is

reluctant to extend the jurisdictional confines of the federal courts by wading into the uncharted waters of fraudulent-egregious misjoinder. *See Bavone*, 2006 WL 1096280, at *4 ("In the Court's view, the fraudulent misjoinder doctrine is an improper expansion of the scope of federal diversity jurisdiction by the federal courts.") (citations omitted).

In any event, the case at hand does not even come close to resembling a situation of "egregious misjoinder" since there is no question that the non-diverse claim discussed above[8] and the diverse claim that served as the basis for removal are properly joined under the almost identical federal and state joinder standards.[9] The removing defendants readily concede that the non-diverse claim alleging breach of a non-disclosure agreement is adequately pleaded. Clearly, this non-disclosure agreement was the direct product of ongoing negotiations to sell the plaintiff's retail business, a "transaction or occurrence" which forms the crux of the present

---

[8]By "non-diverse claim" the court means a claim involving non-diverse parties.

[9]Permissive joinder under the federal rules is governed by Rule 20(a), which provides in pertinent part,

> All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a). The corresponding joinder provision under New York law provides that,

> Persons against whom there is asserted any right to relief jointly, severally, or in the alternative, arising out of the same transaction, occurrence, or series of transactions or occurrences, may be joined in one action as defendants if any common question of law or fact would arise.

N.Y. C.P.L.R. 1002(b).

11

action. Indeed, the non-disclosure agreement was entered into for purposes of keeping confidential the information Kraus disclosed to prospective purchasers during the course of negotiations. (Am. Compl. ¶¶ 33, 72, 86-87.) Moreover, the breach of the non-disclosure agreement resulted, in part, from the disclosure of information to Benjamin Moore, a key player in the potential sale of the plaintiff's retail business. (*Id.* ¶ 68.) That the non-diverse claim involves an agreement that is different from those referenced in the other claims, a point raised by the defendants, is of no significance in the joinder analysis. There cannot be any dispute that the subject matter of these agreements relate to the sale of the Kraus retail business. Nor can it be seriously contested that all of the claims in the complaint stem from and are inextricably intertwined with the plaintiff's efforts to sell its retail business. It therefore makes sound logical and policy sense to litigate the non-diverse claim with the others brought by the plaintiff involving the unsuccessful attempt to sell its retail business. In short, joinder is appropriate here under state and federal procedural rules. And, with the presence of non-diverse parties, the case must be remanded for lack of subject matter jurisdiction.[10]

---

[10]The plaintiff takes issue with various procedural defects in the petition for removal, including the lack of unanimous consent to removal by the defendants, *cf. Comm. of Interns and Residents v. N.Y. State Labor Relations Bd.*, 420 F. Supp. 826, 832 (S.D.N.Y. 1976) ("[The] courts . . . have established a general rule that all defendants who have been served in the state court proceeding must join in the removal petition.") (citing *Chicago, Rock Island & Pacific Railway Co. v. Martin*, 178 U.S. 245, 248 (1900) *and Bradford v. Harding,* 284 F.2d 307, 309 (2d Cir. 1960)) (additional citation omitted), and the violation of Local Rule 81.1 which requires that the removal petition provide, among other things, the state of citizenship of all individuals named as parties. Having already determined that remand is required on other grounds, however, the court need not address these issues.

## II. Kraus' Motion for Attorney's Fees and Costs

28 U.S.C. § 1447(c) provides that, "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Chief Justice Roberts recently clarified the animating policy and standard governing an award of fees and costs under section 1447:

> The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied. In light of these " 'large objectives,' " [*Independent Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 759 (1989)], the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied. [*See, e.g.*, *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004); *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000)]. In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case.

*Martin v. Franklin Capital Corp.*, 126 S. Ct. 704, 711 (2005).

Based on these principles, the court concludes that an award of fees is not appropriate in this case. It cannot be said that the removal here was objectively unreasonable. First, the relatively unique procedural posture of the case, where the plaintiff had withdrawn the suit the first time it was removed to federal court only to institute a similar action in state court with additional non-diverse parties, raises some reasonable questions as to the jurisdictional propriety of the newly added parties. Furthermore, from a legal (as opposed to factual) perspective, the pleadings were certainly problematic, a fact counsel for the plaintiff acknowledged at oral argument. (*See* Oral Arg. Tr. 15-16.) As such, the removing defendants certainly had a sound legal basis for attacking the sufficiency of the pleadings under the fraudulent joinder framework.

13

The court therefore declines the plaintiff's invitation for an imposition of fees and costs upon the defendants.

### III. Kraus' Motion to Amend the Complaint

While the motion to remand was under consideration by this court, the plaintiff filed a motion to amend the complaint on May 11, 2006, which Judge Ross referred to this court for a decision. (Docket Nos. 23, 24, 25.) Having concluded that remand is proper, the court need not, indeed cannot, reach the merits of the motion in light of the absence of subject matter jurisdiction. *See Macro v. Indep. Health Ass'n Inc.*, 180 F. Supp. 2d 427, 431 (W.D.N.Y. 2001) ("If removal was inappropriate, the court must remand for lack of subject matter jurisdiction, notwithstanding the pendency of the other motions.") (citing *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999)) (additional citations omitted). Accordingly, the action, including the pending motion to amend must be remanded for further proceedings in state court.

## CONCLUSION

Accordingly, the plaintiff's motion to remand is GRANTED for lack of subject matter jurisdiction and the case is REMANDED to the New York Supreme Court, Queens County. The plaintiff's motion for attorney's fees and costs is DENIED. The plaintiff's motion to amend the complaint remains open for consideration and determination by the Supreme Court on remand. The Clerk of the Court is respectfully directed, pursuant to 28 U.S.C. 1447(c), to mail a certified

copy of this remand order to the Clerk of the Court for the New York Supreme Court, Queens County.

**SO ORDERED:**

*Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
       June 7, 2006